THE STATE BANK OF ILLINOIS, Plaintiff in Error,

*vs.*

HENRY CORWITH, Defendant in Error.

ERROR TO THE LA FAYETTE CIRCUIT COURT.

Attachment under the act of the legislature of March 25th, 1854, against foreign corporations which have ceased to act as bodies corporate.

Under the act of March 25, 1854, providing for the prosecution of suits against foreign corporations which had ceased to act as such, certificates of indebtedness issued by such corporations are admissible in evidence under the common money counts.

The effect of the act of the legislature of Illinois in relation to the State Bank of Illinois, approved                was to put the bank in liquidation, and to wind up its affairs; and operated as an assignment of its effects for that purpose.

As between the bank and those of its creditors who assented to it, the act of the legislature of Illinois aforesaid, became a contract which is the measure of their rights and duties.

The owners of certificates of indebtedness, issued in pursuance of the act of the legislature of Illinois, aforesaid, who had received their proportion of specie belonging to the bank, under the said act, and also sixteen and two-thirds of the sum for which they were given, thereby assented to the said act, and became bound by it.

Whether the provisions of such act are void as to creditors who did not assent to the the act: Quære?

An agreement not to commence a suit on a demand for a given time, will not defeat an action commenced before the expiration of the time fixed in the agreement.

This was an action commenced by attachment, and prosecuted under and by virtue of the provisions of an act of the legislature of this State, approved March 25th, 1854.

The affidavit on which the suit was commenced, is as follows:

[Venue.] " I, Henry Corwith, of lawful age, and of the county of Joe Davies, in the State of Illinois, being first duly

sworn, depose and say, that 'The State Bank of Illinois,' was a body corporate, and that the same was incorporated by the legislature of Illinois, one of the States of the United States of America, which said corporation once existed, and did business by and under the said corporate name, of 'The State Bank of Illinois,' and that it did so exist and do business for a number of years in the said State of Illinois, under the act creating said body corporate, and under and by virtue of acts amending said act of incorporation, and acts relating to said body corporate and the business of said corporation, all which said amendatory acts, and acts relating to said body corporate and the business thereof, were all passed by the legislature of the said State of Illinois, subsequent to the time of the passing the said act incorporating the said body corporate. And this deponent further saith that said body corporate was once a foreign corporation as to this State, and was a domestic corporation of said State of Illinois: And this deponent further saith that said once existing foreign corporation has ceased to exist or act as a body corporate, and that it has so ceased to act as a body corporate for more than twelve months last past, and that the property, business, affairs and concerns of said body, to wit: The *State Bank of Illinois,* has passed into the hands of Trustees who now, as such Trustees, manage, control and hold at their disposal, the moneys, effects, and property of every kind, whether real, personal, or mixed, belonging or which would belong to said body corporate had the same not ceased to exist or act as a body corporate.

And this deponent further saith, that said trustees manage and hold at their disposal as such trustees, certain real estate situate in the said county of La Fayette, and in other counties in said State of Wisconsin, belonging, or which would belong to said body corporate, to wit: The *State Bank of Illinois,* had the same not ceased to exist or act as a body corporate.

And this deponent saith, that said trustees were appointed by the Governor of said State of Illinois, under, pursuant to and by virtue of a statute law of said State of Illinois, passed by the legislature thereof: And that the number so by said Gov-

ernor appointed was and is three. And this deponent further saith that he has good reason to believe and that he doth believe the names of said trustees to be the following, that is to say: Nicholas R. Ridgely, Uri Manly and John Calhoun. All of whom reside without this State, and in the State of Illinois.

And this deponent further says, that said foreign, once existing corporation, to wit: The ' *The State Bank of Illinois,*' is justly indebted to me upon a demand not sounding in tort, which I have, possess, own and hold against the said body corporate so as aforesaid foreign and once existing, and that the said demand, and that the amount of the said debt now due me is founded upon express contract, and that the same so due and owing to me over and above all legal set-offs, is nine thousand two hundred and eighty dollars and thirty-three cents, over and above all interest upon the same or any part thereof.

And this deponent saith that he has good reason to believe, and that he doth believe, that the said "Nicholas H. Ridgely, Uri Manly and John Calhoun, are now acting in the capacity of trustees as aforesaid, and in the State of Illinois residing.

And further this deponent saith not."

Sworn to, &c.

Upon the foregoing affidavit a writ of attachment issued, the 13th day of August, 1853, commanding the officer to "attach the moneys, credits, effects and property lying or being within this State, which would belong to the 'State Bank of Illinois,' a foreign, (once existing corporation) had the said corporation not ceased to exist or act as a body corporate, however said money, credits,, effects or property may be managed, controlled or held, or so much thereof," &c.

On the 12th day of April, 1854, the plaintiff filed a declaration in the common money counts, with the following bill of particulars attached:

" The following bill of particulars (of which this is a part) exhibits the number of the certificates, evidences of indebtedness—which the plaintiff will offer in evidence, and to maintain

his action will insist upon, on the trial of the cause above entitled, and it also exhibits the date—to whom and the amount payable, as also the amount that has been, as a dividend, paid on each, with the date of such payment.

The form of which evidences is to the effect following, to wit:

" 50            50            50

" This certificate for fifty dollars will be received at all times " by the State Bank of Illinois, in payment of any debts due " the bank, and for any property which the bank may have " for sale. It will also entitle the bearer to the proper pro- " portion of all dividends which may be made to the creditors " of the bank.        Springfield, February 10th, 1843.

    "N. H. RIDGELY, Cash.        T. MATHER, President.

       "Fifty.                   Fifty."

Before issue joined, two several motions to dismiss the writ and proceedings were filed, which were overruled by the court below, but as they are not commented upon in the opinion, they are omitted.

Afterwards on the 30th day of May, 1854, a plea of *non assumpsit* was filed, and upon the issue so joined a verdict was found for the plaintiff below, for the sum of $16.687 upon which judgment was finally entered.

Various exceptions were taken to the ruling of the court below, on the trial, from which it appears that the plaintiff offered in evidence to the jury the following certificate, the execution of which, by the president and cashier of the State Bank of Illinois, was admitted, viz.:

    " 50 This Certificate for      [No. 3018]     A 50 "

Fifty Dollars will be received at all times by the State Bank of Illinois in payment of any debt due the Bank, and for any property which the Bank may have for sale. It will also entitle the bearer to the proper proportion of all dividends which may be made to the creditors of the Bank.

                Springfield, February 10th, 1843.

   N. H. RIDGELY, Cash.        T. MATHER, Prest."

     "Fifty.                   Fifty."

It was admitted by the defendant that the said certificates were issued for a balance of the bills of said Bank, surrendered by the holder in pursuance of the act of the Legislature of the state of Illinois, hereafter set forth after receiving his dividend of the specie of said Bank, as required by said law; in connection with said certificates, the plaintiff also offered in evidence the following act of the Legislature of the state of Illinois, to wit :

An Act to diminish the State debt and put the State Bank in liquidation.

Sec. 1. Be it enacted by the People of the State of Illinois represented in the General Assembly, That the Governor shall nominate, and by and with the consent of the Senate, appoint a Bank Commissioner, who shall be commissioned by the Governor, and before entering upon the discharge of his duties, shall take and subscribe the following oath or affirmation to wit :

" I do solemnly swear (or affirm) that I am not directly or indirectly interested in the affairs of the State Bank of Illinois, as a stockholder, as a creditor, or as a debtor, and that I will faithfully, justly and impartially discharge all the duties required of me by law as Bank Commissioner ;"

And who under the direction of the Governor, shall execute an official bond, conditioned for the faithful performance of the duties imposed upon him by this act.

Said Commissioner shall receive such compensation for services actually performed, not exceeding three dollars per day, as may be allowed by the Governor, and shall hold his office for two years, unless sooner removed by the Governor for good cause, to be communicated to the next session of the General Assembly, and if any such removal shall be made, the Governor shall have power to fill the vacancy by an appointment to endure until the end of the next succeeding session of the General Assembly.

Sec. 2. The State Bank of Illinois is hereby required to go into immediate liquidation within thirty days after the passage of this act, to pay out all her specie at the counter of her

principal bank at Springfield, except fifteen thousand dollars, on all liabilities to note holders and depositors, whether of the principal bank or branches, and upon all its indebtedness, except to stockholders, and upon the real estate found, as the same may be presented for payment, provided, however, that the said bank shall immediately take an account of the specie on hand, and also of the amount of the immediate liabilities to note holders, depositors, and other such creditors, and shall not pay out more specie to any one creditor that his fair proportion, in other words, the payments in specie aforesaid, shall be pro rata, amongst the creditors aforesaid, and the said bank is hereby required to make out, and deliver certificates, signed by the president and cashier, to each creditor for the residue of his debt, after deducting the payment in specie from the whole amount, which certificate shall be registered by the commissioner, in a book to be kept by him for that purpose; said certificate shall be issued in such sums as will suit the convenience of the creditors of the bank, which certificate shall be received in payment of any debt due the bank, and also in payment for any real or personal estate purchased in the bank, or for the redemption of any land purchased, or to be purchased by the bank under execution, provided, that no certificate shall be issued for a less sum than ten dollars, and it is further provided, that every twelve months after the first dividend and distribution herein provided for, the said land and the receivers thereof, hereafter provided for, shall take an account of liabilities, as aforesaid, and pay out pro rata as aforesaid, the amount of specie that may be on hand, to bill and certificate holders of said bank, the indebtedness to stockholders on account thereof excepted, and provided further, that the bank shall not, directly or indirectly, through its officers, agents or otherwise purchase any of the certificates issued under the provision of this act.

Sec. 3.    Said bank is hereby required to go into immediate liquidation upon the passage of this act; it shall not in future, discount any note, lend any money, buy or sell any bill of exchange, issue any paper for circulation, or receive any

deposits, or do any other act usually done by banks, except to wind up its affairs, collect and receive debts and pay the debts of the bank, sell its real and personal estate, issue the certificates for balances, provided for in the second section of this act, renew the notes of its debtors from time to time upon the payment of instalments of one fifth each time, and to sue and be sued in relation to all its dealings; for which purpose, and no other whatever, the charter of said bank is continued for the term of four years from the fourth day of March next, and no longer.

. Sec. 4. The aforesaid creditors of the said bank, shall, before they shall be entitled to the certificates as aforesaid, deliver up to the bank all notes and other evidences of debt held by them, and receipt for all judgments and other demands in favor of such creditors against said bank.

Sec. 5. The bank commissioner aforesaid, shall superintend the proceedings of said bank, and shall act as a director, on the part of the State, he shall exercise due vigilance over the proceedings of said bank, and for that purpose he shall have free access to the books, papers, vouchers, vaults, and cash of said bank, and shall have power in prosecuting his enquiries, to administer an oath to the president, directors, cashier, tellers, clerks, and all other persons, and compel them, or any of them, to testify in relation to said bank, or in relation to any matter or thing touching the proceedings of its officers, affecting the interests of the state, the creditors of the bank, or of the stockholders; and upon the refusal of any of them to be sworn, or testify, he shall have power to issue his warrant to any sheriff, and commit such president, cashier, clerk, teller, or other person to the common jail of the county, until he or they shall consent to be sworn, or testify, as the case may be, provided, said commissioner shall be liable to the party aggrieved, for any abuse of the powers hereby conferred on him. If the said commissioner shall at any time discover that any dishonest practices are countenanced by said bank, or any of its officers, in the management of its business, or that it is about to violate any provision of law, then the said commissioner shall immediately

certify the fact to some justice of the supreme court, whose duty it shall thereupon be, to issue an injunction against said bank, which shall be executed as in other cases, and made returnable to the circuit court of Sangamon county, sitting as a court of chancery, and shall be proceeded in as in other cases of chancery, except, that the circuit court of Sangamon county, on the chancery side thereof, shall always be and remain open to hear causes arising under this act.

The injunction to be issued shall absolutely restrain the said Bank, and all officers and persons connected with it, from doing any act whatever in relation to the matter enjoined, until the further order of said court. The judge who issued the injunction, shall appoint a day for the hearing of the cause, not exceeding ten days after the date of the writ, and he or any other judge may hold the court for that purpose ; no deposition shall be required to be taken, but witnesses may be sworn, and their evidence heard in open court ; upon a hearing of the cause the judge shall have power to alter, modify, or dissolve the injunction, or make it perpetual, and if it should manifestly appear that the creditors or stockholders will be defrauded, then the said court shall have power to decree a forfeiture of the charter of said Bank.

Sec. 6. If the said Bank shall forfeit its charter as aforesaid, it shall not thereby forfeit any of its personal effects, its lands shall not revert, nor shall it be released from any liabilities to its creditors, nor shall any security for the payment of money, either to or from the Bank, be annihilated, but the said court or judge shall appoint three honest and capable men to act as receivers of said Bank, who under the direction of the court, shall enter into bonds with approved security, for the faithful performance of the duties imposed on them by this act, who shall have the power and perform the duties of receivers as in other cases, and shall proceed in the management of the affairs of said Bank in collecting and paying its debts, and selling its real estate and other property, according to such rules and regulations, not inconsistent with law, as shall be made by such court or judge in that behalf, except, that the specie

shall be paid out pro rata to creditors, and in collecting the debts due the Bank, shall renew all notes with security, upon the payment of one-fifth part of the debt by the debtor. The said receivers shall not sell any real or personal property of the Bank for less than two-thirds of its appraised value, to be ascertained by the appraisement of three householders, upon oath, to be appointed by the judge of the circuit court of the county where the property may be situated.

All payments to be made by the receivers shall be made pro rata, amongst the creditors, who, upon giving up their demands to the receivers, shall receive a certificate for the residue of their claim, which certificate shall be received as is provided in the second section of this act.

Sec. 7. The State Bank of Illinois shall, within three days after the passage of this act, signify its acceptance of the provisions of this act, by writing, signed by the president and cashier, under the seal of the Bank, to be filed in the office of the secretary of state ; the said Bank shall, within five days after the passage of this act, deliver to the Governor, acting on behalf of the state, an amount of state bonds, scrip, and other evidences of debt, without interest, equal on their face to the sum of two millions and fifty thousand dollars, reported by the Bank as on hand on the first day of December, one thousand eight hundred and forty-two, in which event the Governor is hereby authorized on the part of the state, to assign to the Bank two millions and fifty thousand dollars of bank stock owned by the state in said Bank, and all the interest of the state in the assets of the Bank, real, personal, and mixed, except so much of the said assets as the state may be entitled to as the holder of fifty thousand dollars of the stock of said Bank, in which event also the state directors in said Bank, except the commissioners aforesaid, shall be withdrawn.

Sec. 8. Said Bank, in collecting its debts, shall not collect more than one-fifth part of the debt due at the passage of this act, at any one time of any debtor by note or judgment, who will pay one-fifth part of all interests and costs, and renew or give his notes with good security, to be paid in seven months,

Provided, in case the Bank shall become subject to the opera-
tion of this act, the Bank shall not in any case charge more
than six per cent. interest upon the renewal of any bill dis-
counted, and provided also that the time of renewal and pay-
ment shall not be changed except with consent of the debtor,
and the said debtor shall have the privilege of making such
payment and renewal in the county where his debt is now pay-
able, and the Bank shall appoint agents in the counties in
which branches have been or are now located, for the purpose
of carrying this section into effect. In case any debtor of the
Bank shall obtain a certificate or certificates issued under the
provisions of this act, and shall surrender the same to the offi-
cers of the Bank, or the holder of any note given to the Bank
for endorsement thereon, the amount of such certificate or cer-
tificates shall be endorsed on such notes, and the endorsement
shall bear interest at the same rate per cent. as was allowed
upon the note upon which such endorsement is made.

Sec. 9. The real estate of the bank, excepting so much
thereof as may be necessary to be reserved, shall be appraised
by three householders on oath, or a majority of them, resident
of the county where the real estate shall be situated, to be
appointed by the governor, and after due notice, and within
six months after the passage of this act, the said real estate
shall be offered for sale at public auction, and shall be struck
off to the highest bidder, at or above the appraised value there-
of; any real estate failing to sell at its appraised value, or an
advance thereon as aforesaid, shall be subject to private pur-
chase, and shall be sold whenever, thereafter, the appraised
value shall be offered for the same : Provided, that no real
estate of said bank shall be sold on execution for less than two
thirds of its appraised value, to be ascertained by the appraisal
of three householders, on oath, or a majority of them, to be
appointed by the judge of the circuit court of the county where
the estate shall be situated. No debtor of the bank shall be
garnisheed by any holder of certificates, authorized be be
issued to creditors under the provisions of this act.

Sec. 10. The state shall continue to own fifty thousand dol-

lars of stock, heretofore subscribed, in said bank, for the purpose of continuing the constitutional existence of the same, to enable it to wind up its affairs, and for no other purpose whatever, and at the expiration of the time by the act allowed to the bank to wind up its affairs, the said bank shall surrender to the governor of the state an amount of bonds or other state indebtedness, or gold and silver coin, equal to the amount of stock authorized to be retained by said bank, and when the same shall be so surrendered it shall then be the duty of the governor to surrender said fifty thousand dollars of stock to said bank.

Sec. 11. All other matters of difference between the state and the bank shall be submitted to arbitration, one of the arbitrators to be appointed by the governor; and another by the bank, and if they two cannot agree they may choose a third whose umpirage shall be final; and if the state shall be found indebted to the bank, the governor is hereby authorized to issue certificates of indebtedness to said bank, under the seal of state, and if the bank shall be found to be indebted to the state, the debt shall be paid by said bank by a surrender of state liabilities to the governor, to an amount of their face equal to such debt.

Sec. 12. The said bank shall be required to abolish its branches, and the notes issued at said branches shall be payable at the principal bank.

Sec. 13. If the bond, scrip, and other evidences of debt, heretofore mentioned, shall be delivered to the governor, in pursuance to the act, he shall cause the same to be registered by their numbers, amounts and dates, in the office of the Secretary of State, and shall then produce the same to be destroyed in the presence of the General Assembly.

Sec. 14. That the thirty-first section of an act to incorporate the subscribers to the bank of the state of Illinois, be, and the same is hereby repealed, and hereafter the laws now in force, or hereafter to be in force, regulating the mode of selling property, for the collection of debts, shall apply to the debts due to the said bank the same as to those due to individuals.

Sec. 15. That in no case shall any dividend or dividends be made to any stockholders until depositors, bill holders, and certificate holders shall have been paid.

Sec. 16. The certificates to be issued under the provisions of this act shall be in the following form: "This certificate for       dollars       cents, will at all times be received by the State Bank of Illinois in payment of any debt due the bank, or for any property which the bank may have for sale. It will also entitle the bearer to the proper proportion of all dividends which may be made to the creditors of the bank.

     Cashier.        President.

Approved· January 24, 1843.

On the 26th day of January, A. D. 1843, in compliance with the provisions of the foregoing act, the acceptance of the act was filed by said bank in the office of the Secretary of State of Illinois, which was proved by certificates thereof, duly authenticated.

And the plaintiff having had no further evidence to introduce, to sustain his action, rested. The defendant's counsel then objected to said evidence, and moved the court to exclude the same from the jury, because said evidence did not show, or prove any such cause of action in favor of the plaintiff, as is alleged in the plaintiff's declaration, but the court overruled the motion, and permitted the evidence to go to the jury, to which opinion of the court in overruling said objection, and permitting said evidence to go to the jury, the defendant excepted. And the court instructed the jury that said certificate and the laws of the State of Illinois aforesaid, entitled the plaintiff to recover the amount of said certificate in this action, to which instructions of the court the defendant by his counsel excepted. And the court further, on the application of the plaintiff, instructed the jury that the plaintiff was entitled to, and that he should allow interest on said certificate, or so much thereof as remain unpaid from the date thereof; to which instructions the defendant excepted, on the ground that no interest should be allowed thereon, but not for the amount allowed.

The plaintiff further offered in evidence, two hundred and twenty-one certificates of the same character, amount, and date, amounting in all to eleven thousand one hundred dollars, in which the same ruling of the court in all respects was made, and said certificates read in evidence, to which said several rulings the defendant at the time excepted.

On each certificate was an endorsement that sixteen and two-thirds per cent. of said certificates had been paid. This was all the evidence in the cause material to the decisions aforesaid. The jury thereupon found a verdict for the plaintiff for $16,687.00 The defendant thereupon moved the court for a new trial, for the following reasons:

1st. The court erred in permitting the certificates issued by the officers of the State Bank of Illinois to go to the jury as evidence of indebtedness.

2d. The court erred in instructing the jury to allow interest on these supposed certificates of indebtedness.

3d. The court erred in not permitting the trustees of the bank to come in and defend in this suit.

Which motion was overruled by the court, to which opinion of the court in overruling said motion, the defendant then and there excepted. And the defendant now prays that this, his bill of exceptions, may be signed, sealed, and made part of the record, which is done accordingly.

*Saml. Crawford*, for the plaintiff in error, contended, at length, that the court below erred in overruling the motions to dismiss the writ and proceedings, and to this point cited several authorities, which it is not necessary to insert.

He also contended that

I. The court erred in permitting the certificates offered, to be read as evidence of the cause of action set forth in the declaration, and in instructing the jury that said certificates and the laws of Illinois aforesaid, entitled the plaintiff to recover the amount of said certificates in this action.

There was no evidence given of the liability of the plaintiff in error upon any contract, or for any moneys had or received

from the defendant in error, except such liability as may arise in law. from the terms of the certificates, and the effect of the act of 1843, under which they issued.

It is insisted that by delivering up the bills of the bank, the holder thereof, who accepted in exchange a *pro rata* payment, in specie, and the residue in certificates, (as conceded in the bill of exceptions) entered into a new *express* contract which could not entitle him to recover in this action.

What that contract was is apparent on the face of the certificate. It is that the State Bank shall, at all times, receive the same in payment of any debt due to the bank, or for any property which the bank may have for sale, and that it will entitle the bearer to the proper proportion of all dividends which may be made to the creditors of the bank.

To render the bank liable to any action on this special contract, there should be some evidence of a breach. There was no evidence that the bank or its representatives refused to receive these certificates in payment of debts due to it, or in payment for any property which it had for sale, but there was evidence, by endorsement on each certificate, that sixteen and two-thirds per centum had been paid thereon, and it did not appear that any further dividend had been made to the creditors of the bank. In the absence of such proof, no action could be maintained on the special or express agreement contained in the certificate, because there had been no violation of it, and indeed the plaintiff in the action does not count upon the express contract. The declaration contains only the common *indebitatus* counts.

It is insisted, however, that, in the absence of all other evidence, these certificates would not be evidence of an implied assumpsit or promise to pay money. The agreement as expressed in the certificates remains in full force, and for this reason the holder cannot recover on the common counts. Implied promises, or promises in law, only exist in the absence of express agreements. *Wood vs. Edwards*, 19 John. 205 ; *Clark vs. Smith*, 14 Id. 326 ; *Jennings vs. Camp*, 13 Id. 94 ; *Raymond vs. Bearnard*, 12 John. 274 ; *Sewell vs. Schroepel*, 4 Cow. 566 ;

*Toursaint et al. vs. Martinnant*, 2 Term R. 100 ; *Grimman vs. Legge*, 8 B. & C. 324 ; 1 Chittys Pl. 355 ; *The Chesapeake & Ohio Canal Co. vs. Knapp*, 9 Peters, 565 ; *Burlingame vs. Burlingame*, 7 Cowen 92 ; *Robertson vs. Lynch*, 18 John. 451 ; *Maynard vs. Tidball*, 2 Wis. 34, 40.

These certificates contain no agreement or promise to pay any specific amount of money at any time, and the plaintiff must recover, if at all, on a promise implied in law. · When parties contract on a given consideration passing from plaintiff to defendant, and defendant, for that consideration, makes an express contract, which is accepted by plaintiff as the required equivalent of the consideration, to do or procure to be done any act, the law never raises an implied assumpsit. A loan or advance of money without any express agreement as to what is to be done in return, gives an immediate right of action for the money, but if on the loan or advance of money a promissory note is taken payable in one year, the immediate right of action is gone, because there is an express contract received to pay at an agreed time, and therefore the law does not imply a promise to pay on request. So, if for the same advance of money, a bond had been received conditioned for the delivery of a horse, or the conveyance of a tract of land, or the performance of any act by the person to whom the money has been advanced, the law will not imply a contract to repay the money on request, during the subsistence of a contract. But if the contract have been violated by the defendant by not paying the money, delivering the horse, or doing the act, when by the contract he was required to do so, then the plaintiff may recover back his consideration advanced, because the contract on which it was advanced has not been performed. So if the contract has been to do an act in consideration of an advance made, on the happening of some contingency, until the contingency happens the special contract is open and subsisting, and the plaintiff cannot recover back his advanced consideration. If it were otherwise any party might rescind his contract at pleasure.

The express contract created by these certificates and obligatory upon the bank, is, 1st. That it will receive the certificates

at all times in payment of any debt due to it.   2d.   That it will receive the certificates in payment for any property which it may have for sale; and 3d.   That the certificates will entitle the bearer thereof to his proper proportion of all dividends which might thereafter be made to the creditors of the bank. For the due performance of these acts the bank became responsible, and it cannot be responsible for anything more.   It is respectfully insisted that until a failure or refusal to do some one of these acts on the part of the bank, the holder of the certificates cannot treat the contract as rescinded and resort to his consideration in an action on the common counts.

The plaintiff has chosen to receive for the consideration advanced or surrendered by him this contract, and he must abide by its terms until they are violated, because if it be not violated, manifest injustice would be done to other parties, creditors of the bank, if the plaintiff should be permitted to abandon his contract and claim his consideration.

II.   The court erred in overruling the motion for a new trial.

1st.   There was no proper evidence of an indebtedness to the plaintiff; and

2d.   The instructions given to the jury were erroneous.

*James H. Knowlton and Ch. Dunn*, for the defendant in error, argued at length that the decision of the court below, overruling the motion to dismiss, was correct.

The counsel for the defendant in error also contended that there was no error in the ruling of the circuit court on the trial, either in admitting the certificates in evidence under the declaration, or in the instructions given to the jury.

It is difficult to discover why these certificates are not evidence under the common counts in assumpsit independently of any statutory provision.   In New York, it has been held that a note payable in specific articles is evidence under the common counts.

Our statute, however, settles this question, unless mere constitutional interference prevents.   The statute is, "In all

actions founded upon contract express or implied, not under seal, and not depending upon condition or contingency before any portion of the sum claimed would, or has become due ; it shall not be necessary to declare specially, but it shall be sufficient for the party plaintiff to declare in the common money counts, and with such declaration to file a bill of particulars, setting forth therein in brief language the subject matter upon which the action is based." Ses. Laws, 1854. page 55, chap. 43. This was done : the bill of particulars gave a copy of the certificates and the amount, number and date of each.

Whether these certificates were implied, or express contracts is quite immaterial. In connection with the certificates the legislation of Illinois concerning this bank were read in evidence, as appears from the bill of exceptions. This was authorized by our statute. "Printed copies of the statute laws, and all acts and resolves of the legislature of any state or territory of the United States, if purporting to be published under the authority of their respective governments ; or if commonly admitted and read as evidence in their courts, shall be admitted in all courts in law and equity, and on all other occasions in this state, as *prima facie* evidence of such ʳlaws, acts and resolves ; and hereafter it shall not be necessary to set forth the same by plea or otherwise ; but such statutes, laws, acts or resolves, may be given in evidence under pleadings and allegations in the usual form in all courts in this State." Ses. Laws, 1854, pages 11 and 12, chap. 6.

The provisions of the act to put the bank in liquidation concerning these certificates are facts, or in the nature of facts and circumstances which enter into and determine or help to determine the legal effect of the instruments. The bank appears at least to have been indebted to depositors and bill holders. It was required, and undertook to ascertain how much it was indebted to each such creditor,—to have a settlement with him, pay him part of the debt due, and give him an instrument in writing, or certificate for so much of the debt as remained due and unpaid after the payment was deducted that was made at the time of such settlement.

How could an instrument be given by a person for the residue of a debt due to another, and that instrument not be evidence of a debt due, and the amount due and unpaid? It is not conceivable. These certificates were then evidence of a debt due by the bank, and the amount due, as ascertained on accounting, or on settlement. What was that debt in this case? The record (bill of exceptions) shows that these certificates were given for the bills of the bank. Were these bank bills money bills, or what were they? If "money bills," then the debt due was a money debt; which debt, in its bills, the bank had promised to pay together with more which it had paid. The giving and taking of these certificates was a mere substitution of one evidence of indebtedness for another, without any new consideration passing between the bank and Corwith. This substituted security does not extinguish the existing indebtedness, unless it was so agreed at the time. Of such agreement there is no evidence. Vide *Toby* vs. *Barber*, 5 Johns, 68; *McGuire* vs. *Holmes*, 2 Watts, 121; *Higgins* vs. *Packard*, 2 Hall, 547; *Chastain* vs. *Johnson*, 2 Bail., 574; Coxe. R., 85; 9 Conn., 23, 25; Alab. R., 615; 1 Cow. R.

Now could not Corwith have maintained an action on these instruments at any time after he received them against the bank, during the four years it was required to wind up its affairs and pay off its indebtedness? Most certainly this was authorized by the most positive language of the act. This bank was also required every twelve months after the first dividend, to take an account of its liabilities, and to pay out *pro rata* the amount of specie it might have on hand, to bill and certificate holders, "the indebtedness to stockholders on account thereof excepted."

Notwithstanding this, only one payment was made to Corwith from the 10th day of February, A. D. 1843, to the trial in October, 1854,—over eleven years—and that only 16⅔ per cent. The fourth of March, 1847 passed,—the bank was then allowed some year and eight months more to gather its effects, pay its debts, &c. That time elapsed, and their trustees and assignees took hold and were required to do what the bank

should have done long before. They, too, have exhibited a "masterly inactivity,"—done nothing. "Deborah is as good as Barak."

Corwith, a very considerable creditor, has exhibited a patience, in waiting for payment, that would have been creditable to a saint. Yet, he is met with the objection that he cannot maintain an action on these certificates. That he at least must show a breach, or failure to comply with the terms of the certificates.

What constitutes a failure to comply, or a breach? If payment was to be made on a debt as often as once a year, and to be entirely paid within four years; and during not only that period, but six or seven years added to that time, only one payment of 16⅔ per cent be made, would not constitute such breach, what would? We take it that a payment must have been demanded, or a request to comply with the undertaking contained in the certificates must have been made when the payment of 16⅔ per cent was made. The bank was bound to pay (in cash) its bills on presentment. It was also bound to receive its bills in payment of any debt due to it. The language of the enactment is: "The State Bank of Illinois shall at all times receive its own bank bills in payment of any demand, debt, or claim, due to the bank, from any individual or corporation whatever." Sess. Laws of Illinois, 1840, p. 16, sec. 2.

If the bank sold land, the agreed purchase price would be a "claim" or "demand" due the bank. This provision is a legitimate exercise of legislative power. Its operation and effect is the same as the law of set-off. It is cancelling one debt with another, either *in toto* or *pro tanto*. The ultimate obligation of contracts by this means is preserved and enforced, not "impaired." Suppose instead of this provision the legislature had declared, " that in all actions and suits brought by the State Bank of Illinois for the recovery of any demand, debt or claim due it, from any individual or corporation, it should be lawful for the defendant to set off the bills of the bank to the amount of the plaintiff's claim or debt;" would any

one undertake to maintain that this enactment was not a valid law? We think not. The obligation of the contracts between the bank and Corwith on the bank bills held by him, and by him exchanged for the certificates, were precisely the same as those contained in the certificates,—even if we adopt the reasoning of the counsel for the bank. These bank bills, were in the hands of Corwith, evidence of a debt due from the bank to him, as the holder thereof;—payable by the promise of the bank on demand. That demand was made—a part of that debt was paid, and certificates for (what?) the balance of that same debt were given to Corwith. The same debt continued— was never extinguished—no higher security given—no accord and satisfaction. Satisfaction being the material thing—is just what Corwith is seeking to obtain.

*Runlet vs. Moore,* 1 Foster, 333, decides that an agreement to receive payment in a collateral thing or article, is no defense without satisfaction. There is no consideration for such an agreement. 3 Call., 438 ; 6 Wend., 390 ; 5 New Hamp., 136 ; 17 Mass., 583 ; 6 Monroe R., 38 and 294 ; 4 Watts, 126 ; 23 Wend., 342 ; 19 Wend., 516 ; 7 Blackford, 582.

So that this action was maintainable without question, upon the original consideration.

The objection taken to the admission of the certificates in evidence was simply that the declaration was not such as would entitle the plaintiff to read these instruments in evidence at all—by that objection the plaintiff must stand or fall. New ground cannot for the first time be taken in this court. *Vide* Laws of 1854, p. 55. If a debtor gives his own note for his indebtedness, he does not thereby preclude the creditor from maintaining an action on the original consideration if he produces the note for cancellation on the trial. 5 Wend.; 85 and 490 ; 3 Serg. and Rawle, 233; 26 Maine, 475 ; 12 Barb. S. C. R., 209, 5 ibid 408 ; 5 Johns, 68 ; 1 Cow. R., 290 ; 6 Barb. S. C. R., 244.

The following are the conclusions to be drawn from the view taken of the case in the preceding argument:

1st. That the State Bank of Illinois as plaintiff in error can-

not be heard to say that it does not exist, even if it had not pleaded non-assumpsit and taken a trial on the merits in the court below.

2d. That the plaintiff in error, having pleaded the general issue, could not afterwards move to dismiss the suit, either directly or through trustees or other fiduciaries—that the plea precluded the doing of such act.

3d. That the plea of non-assumpsit must be considered a good appearance by the bank, or the trustees and assignees thereof, or of both the bank and the trustees and assignees. Otherwise there is no bill of exceptions in this case that the court can look into for any purpose whatever.

4th. After a plea of non-assumpsit interposed, the court will not look back of the declaration to see whether the prior proceedings were correct or not. The plea is a waiver of any previous defects or errors, if the court has (as it did have in this case) jurisdiction of the subject matter. *After Verdict* the statute of amendments cures all errors and defects, even the want of a writ.

5th. That the legislation of this State, concerning the enforcement of the satisfaction of demands (so far as this case is concerned) by attachment proceedings, embraces only two subjects, namely:—lands within the limits of this State and subject to its *sole absolute* jurisdiction,—and a remedy to enable creditors to obtain satisfaction of their demands out of that land, and which is owned by the debtors, or which forms at least a part of a trust fund charged with the payment of these demands—which is also within the sole exclusive jurisdiction of the State, and is therefore valid.

6th. That as this property is pledged for the payment of the debts due the creditors of the State Bank of Illinois, it was competent for the legislature of this State to provide any mode it saw fit to enable those creditors to obtain satisfaction of their demands out of the property thus charged. It was with the legislature to say whether the creditors should have a remedy at law, or in equity, and what that remedy should be, and how that remedy should be pursued.

7th. These lands and the remedy for the creditors of the bank being both within the exclusive jurisdiction of this State, it was immaterial whether the bank existed and acted as a body corporate ; or whether it existed, but had ceased to act as a body corporate ; or whether it had become non-existent, or to all intents and for all purposes absolutely dissolved. The legislature in either case authorized the proceedings had in this case.

8th. The State Bank of Illinois (so far as the record shows) was at the time of the trial and still is in existence, although some of its functions may have been suspended.

9th. The act of March 8, 1854, Sess. Laws Wis., p. 48, gave a lien to an attaching creditor from the time an appearance was entered, and that continued until final judgment at least. It also continued all suits theretofore commenced under the act of July 12, 1853, chap. 106 Sess. Laws, and the circuit court was precluded from granting the motion to dismiss. The case had to proceed to final judgment and satisfaction, and be governed by this—the act of 1854.

10th. The legislation of Illinois never attempted to repeal the charter of the bank. If it did by any act, it was by the 3d section of the act of liquidation, ¦approved Jan. 24, 1843, and so far as this section contained any repealing language, it was repealed by implication by the act of March 1, 1847.

11th. The power of repeal not being reserved in the charter of the bank, it was not within the power of the legislature to repeal it without the assent of the great body of the corporation. Vide *Smith vs. Smith*, 3 Dess. S. C. ch. R 557. The record does not show any such assent, or assent that is of any earthly avail to that end. But if any such assent does appear, the like assent appears to the act of March 1, 1847, which restored the charter as it stood originally and before the repeal ever took effect as contemplated by the 3d section of the act of 24 Jan., 1843.

12th. The charter being limited by its own terms of duration until 1860 must (it is presumed) exist until it expires by its own limitation.

13th. The legislation during the life of this charter could not continue its existence to a time which would arrive before the charter would by its own terms expire.

14th. The legislature did not possess the power by an enactment to transfer the title to real estate situated in this State.

15th. If the lands attached in this suit were transferred to Calhoun, Ridgely and Manly in trust for the creditors and stockholders of the bank, it was by the voluntary act and deed of the bank—and if so transferred, the same was yet under the absolute control of the legislature of this State; and that body could well provide a remedy at law by which a creditor of the bank could enforce satisfaction of his demand, or debt, out of that land. The legislature was also competent to declare, or allow the creditor who first attached to be first paid. The maxim of the common law is the same as in this matter.

16th. There was a debt due from the bank to Corwith, as the holder of the bills issued by it, on the 10th day of February, 1843, which was evidenced by these bills—that a part of that same debt was evidenced by the certificates on that day issued.

17th. The indebtedness was liquidated and ascertained on the 10th of February, 1843, of which the certificates held by Corwith and the act of January 24, 1843 were evidence. And that from the time of such liquidation, Corwith was entitled to interest at the rate of 6 per cent. under the statute of Illinois, and also under the general law concerning interest as settled by courts.

18th. The defendant in error was entitled to exact ten per cent under the 26th section of the charter of the bank, from the 10th of February, 1843, in lieu of interest. This Corwith might, as he did, let go and take less. In other words, he might take the six per cent. interest allowed by the laws of Illinois. And this was beneficial to the bank; and it, therefore, cannot complain that the plaintiff below took a verdict for less than he was entitled to.

That the stock subscribed, and all the property and assets of a dissolved moneyed corporation is a trust fund charged with the payment of the creditors of the corporation—and that they may follow it and obtain satisfaction of their demands in a court of equity without legislative enactment. *Vide*, in addition to cases already cited : *Wood vs Dummer*, 3 Mason's R.; 808 ; *Cooper vs. Frederick*, 9 Alab. R., 742 ; *Dudley vs. Price's Administrators*, 10 B. Mon. R., 84 ; *Bank of Natchez vs. Chambers*, 8 Miss. R., 49 ; *State vs. La Grange and Memphis R. R. Co.*, 4 Humph., (Tenn.,) R., 488.

As to what is a *suspension* of a corporation rather than a dissolution *Vide*. *Rex vs. London*, 1 Shower, 278, 280 ; *Colchester vs. Seabar*, 3 Burr. 1870 ; *Scarborough vs. Butler*, 3 Lev. 237 ; *Philips vs. Wickham*, 1 Paige, 59, *Ibid* 597 ; *Rose vs. Turnpike Co.*, 3 Watts. (Penn.) R. 46 ; *Weir vs. Bush*, 4 Littell, (Ky.,) R. 433.

As to what is *not* a surrender of corporate franchises see *The Regents of the Univ. of Maryland vs. Williams*, 9 Gill & John. R., 365 ; *Revere vs. Boston Copper Co.*, 15 Pick. R. 351 ; *Campbell vs. The Mississippi Union Bank*, 6 How. (Miss.) R. 681 ; *Langley vs. The Langley Stage Co.*, 23 Maine 39 ; *Brinckerhoff vs. Brown* 7 John. Ch. R. 217 ; *Mickles vs. The Rochester City Bank*, 11 Paige 118 ; *State vs. The Bank of Maryland*, 6 Gill & John. 205 ; *Boston Glass Manufactory vs. Langdon and Trustee*, 24 Pick. 49.

As to maintaining suit by and against &c. *State vs. Rives*, 4 Iredel N. C. 309 ; *Russell vs. McLellan*, 14 Pick. 63, decides that the death of *all the members of a corporation at the same moment of time will not work a dissolution*. *Oakes vs. Hill*, 14 Pick. 442 ; *Spencer vs. Champion*, 9 Cow. R. 536 ; *Wilde vs. Jenkins*, 4 Paige 489.

Forfeiture must be adjudged by a court; even though the terms of the charter are that the corporation should be dissolved on non-performance of a condition. *The People of Vermont vs. Soc. for Propagating the Gospel*, 1 Paine C. C. R. 118.

Abstract of Laws of Illinois relating to the State Bank of Illinois:

1st. State Bank chartered Feb. 12, 1835, page 7; 2d. Supplemental act 1836, page 237; 3d. Additional act 1837, pages 16, 18, 23—Special Session, 1837, page 6; 4th. Another act, 1840, page 15; 5th. 1843 and 1844, pages 21 and 27; Act of Liquidation; 6th. 1845, pages 144 and 246; 7th. 1847, page 20.

*By the Court*, WHITON, C. J. This case was commenced by the defendant in error (Corwith) against the State Bank of Illinois by attachment, and was prosecuted under the provisions of an Act of the Legislature of this state, passed on the 25th day of March, 1854. By this act any person having a demand not sounding in tort, against any foreign corporation which has ceased to act as a body corporate in whole or in part, from any cause whatever, may commence and prosecute to final judgment any appropriate action, and may enforce satisfaction of such debt out of any property which would have belonged to any such corporation if it had not ceased to act as aforesaid.

This act contains other provisions relating to the prosecution of suits against these corporations, but we do not deem it material to consider them, in order to determine the questions presented by this record.

It appears that a motion to dismiss the case for various reasons was made in the circuit court, and by the court overruled.

At the trial, the plaintiff offered in evidence a certificate signed by T. Mather, the president of the bank, and by N. H. Ridgeley, cashier, to the effect that the certificate for fifty dollars would be received at all times by the bank in payment of any debt due the bank, and for any property which the bank might have for sale, and that it would entitle the bearer to the proper proportion of all dividends which might

be made to the creditors of the bank. Across the face of the certificate, are written the following words: "N. H. Purple, dividend 16⅔ per cent. paid 15th August, 1851."

It was admitted by the defendant that the certificate was issued for a balance of the bills of the bank surrendered by the holder in pursuance of an act of the legislature of the state of Illinois hereinafter noticed, after receiving his dividend of the specie of the bank, as required by the said act. A copy of the act of the legislature of Illinois in question, was offered in evidence by the plaintiff in connexion with the certificate. The act provides for the appointment of a bank commissioner, and requires the bank to go into liquidation within thirty days after its passage; it also provides that the bank shall pay out all its specie to its creditors *pro rata* except fifteen thousand dollars. The act also provided that the bank should make out and deliver to each creditor a certificate signed by the president and cashier for the residue of his debt, which certificate should be received in payment of any debt due the bank, and also in payment for any real or personal estate purchased of the bank, or for the redemption of any land purchased, or to be purchased by the bank on execution. The act further provided that every twelve months after the first dividend, the bank or the receiver should take an account of the liabilities of the bank and pay out *pro rata* to bill and certificate holders of said bank—stock holders excepted—the specie that might be on hand. The act further provided that the bank should issue no notes for circulation, and should do no acts usually done by banks, except to wind up its affairs, collect its debts and pay its creditors.

The act provided for the appointment of officers and agents to carry its provisions into effect, and contained many provisions which appear to be all intended to wind up the affairs of the bank, and to distribute its property equitably among its creditors, who were required before they received the certificates above mentioned to deliver up to the bank all their evidences of debt against it. It appeared that this act of the legislature of Illinois was assented to by the bank.

State Bank of Illinois vs. Corwith.

The defendant objected to this evidence, but the judge overruled the objection, and the defendant excepted.

The plaintiff then offered in evidence two hundred and twenty-one certificates like the one above mentioned, on each of which there was the same endorsement, that 16 2-3 per cent. had been paid. To the introduction of this evidence the defendant objected, but the judge overruled the objection and permitted the evidence to go to the jury. To this ruling the defendant excepted.

It appears from the bill of exceptions that the judge instructed the jury that the certificates entitled the plaintiff to recover. To this instruction the defendant excepted.

The jury gave a verdict for the plaintiff.

We are of opinion that the ruling of the judge was erroneous. The effect of the act of the legislature of Illinois above alluded to, was to put the bank in liquidation and to wind up its affairs. In effect it took from the bank the control of its property and applied it ratably and equitably to the payment of its debts, and operated like an assignment of it for that purpose. We will not say that the creditors of the bank who did not assent to the act were bound by it, but those who like the bank did assent to it, cannot now pursue their remedy against the bank, except in a way consistent with its provisions.

As between the bank and those of its creditors who assented to it, the act of the legislature became a contract, which must be the measure of their rights and duties.

It appears that the original holder of these certificates received his proportion of the specie belonging to the bank under the act, and also 16 2-3 *per cent.* of the sum for which these certificates were given.

This sum was also received in accordance with the act and pursuant to its provisions.

This is conclusive evidence that the owner of these certificates assented to the act of the legislature and became bound by it. He must therefore be held to prosecute his claim against the bank in the way which the act provides.

Now it appears that the act contains minute provisions as to the manner in which the property of the bank is to be converted into money, for distribution among its creditors, and it appears to have been supposed that a number of years would be required to accomplish this object.

These arrangements may be void as against those creditors of the bank who did not assent to them, on the ground that their effect is to hinder and delay the creditors in the collection of their debts, but this cannot be relied upon by those creditors who have assented to the act, for the purpose of enabling them to set aside a contract into which they have voluntarily entered with the bank.

Those creditors who have availed themselves of these arrangements, and have in pursuance of the act received their proportion of the property of the bank, cannot now be allowed to say, True, we have proceeded under the act, and have surrendered our evidences of debt against the bank, have taken our certificates, and received our proportion of the property of the bank, but now we claim the right to sue the bank and collect our debts out of any property belonging to the bank which we can find. This would be contrary to the plainest rules of morality and the soundest principles of law. (*Hampshire vs. Franklin*, 16 Mass. R. 86.)

It is true that an agreement not to commence a suit on a demand for a given time will not defeat an action commenced before the expiration of the term fixed in the agreement, but the contract contained in the act of the legislature of Illinois between the bank and the defendant in error, and the acts of the parties under it, are much more than such an agreement. By his assent to the act, the defendant in error not only agreed that he would take his dividends *pro rata* with the other creditors of the bank, as they should be made under the provisions of the act, but that the property of the bank should be converted into money for the purpose of making the payments to the creditors in the manner provided for in the act. And his conduct in receiving his proportion of the property of the bank

State Bank of Illinois vs. Corwith.

which had been converted into money, shows a partial performance of the contract by the bank and the defendant in error. To permit the latter now to repudiate this contract and collect his debt as though the contract had no existence would, as we have before stated, be contrary, as well to the rules of morality as the principles of law.

The judgment of the court below must therefore be reversed and a new trial ordered.